| United States District Court | Southern District of Texas |
|---|---|

| | § | |
| Latshaw Drilling Company, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | Civil Action H-12-1623 |
| | § | |
| SAIA Motor Freight Line, LLC, | § | |
| | § | |
| Defendant. | § | |

## Opinion on Partial Summary Judgment

1. *Introduction.*

A shipper hired a carrier to transport its valve. The carrier issued a bill of lading. The shipper completed and signed it, but it left the declared value blank. The carrier's tariffs said that failing to declare a value limited its liability. The carrier's liability was limited.

2. *Background.*

Latshaw Drilling Company, LLC, drills oil wells by contract. SAIA Motor Freight Line, LLC, is a motor carrier. Latshaw hired SAIA to deliver a 400-pound valve from Gene Autry, Oklahoma, to Houston, Texas, for repair. SAIA took possession of the valve and issued a bill of lading. The bill mentions SAIA's tariffs, the Uniform Bill of Lading, and NMFC 100. The bill also has a declared-value provision – a space to declare a shipment's value for increased level of liability at a normally greater freight rate. SAIA's tariffs limit its liability to $0.10 per pound, if no value is declared on the bill. The bill itself, however, does not repeat this. Neither company declared a value on the bill.

On July 12, 2011, the day of expected delivery, SAIA brought the valve to its terminal in Houston – then lost it. On August 30, SAIA said that it had found the valve – it apparently had not. On September 15, SAIA recognized that it had confused the valve with a blowout preventer. Latshaw never received it.

Latshaw wants $14,155.00 plus tax and shipping to replace the valve. SAIA says its liability for used cargo is limited to $0.10 per pound – $40.

3.  *Liability.*

SAIA's liability is governed by the Carmack Amendment because it was a carrier under a bill of lading for freight crossing state lines.[1]

Carriers may establish freight rates with a limit to their liability.[2] Liability is limited by written declaration of the shipper or by written agreement between the carrier and shipper.[3] To limit its liability, a carrier must: (a) get the shipper's agreement about liability; (b) give the shipper a reasonable opportunity to choose between liability levels; and (c) issue a bill of lading before moving the cargo.[4] The act no longer makes a carrier file its tariffs.[5] If the shipper does not know the carrier's rates or have a copy of its tariffs, it must request them.[6] The parties may limit liability according to a carrier's tariffs if they are incorporated into the bill of lading.[7]

SAIA had tariffs. They were readily available on its website. The tariffs said that, when no value is declared on the bill, its liability is limited to $0.10 per pound. They also said several times that a shipper must request excess-liability coverage. The bill incorporated SAIA's tariffs. At the top of the bill, it says that the shipment is "...subject to the classifications and lawfully filed tariffs." In the terms on the back, it mentions its tariffs and value declaration. Finally, the bill's shipment label said freight was subject to SAIA's tariffs.

SAIA's bill also has this declared-value provision:

> NOTE – Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property. The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding.

---

[1] See 49 U.S.C. § 14706 (2012).

[2] 49 U.S.C. § 14706(c)(1)(A).

[3] Id.

[4] Rohner Gehrig Co. v. Tri-State Motor Transit, 950 F.2d 1079, 1081 (5th Cir. 1992).

[5] 49 U.S.C. § 14706(c)(1)(B).

[6] Id.

[7] Fireman's Fund McGee v. Landstar Ranger, Inc., 250 F. Supp. 2d 684, 688 (S.D. Tex. 2003).

The bill then had a space to declare a value – it was left blank.

Latshaw completed the bill. It described the cargo and its weight, and it signed the bill. It did not, however, declare a value. The declared-value provision was located where it is on nearly all bills. Latshaw's signature was immediately below the blank declared value. Nowhere on the bill did Latshaw attempt to declare a value. Latshaw was a frequent business shipper and consignee. If Latshaw did not know SAIA's rates or its limitations, it could have asked. If Latshaw was confused by SAIA's bill and the declared-value provision, it could have asked. It did none of this. Latshaw cannot declare no value, get low shipping rates, and then demand high liability coverage when something goes wrong.

SAIA had tariffs and made them publicly available. Latshaw had the opportunity to choose between different levels of liability. Latshaw signed the bill and declared no value – it agreed to its limited coverage. Finally, SAIA issued the bill.

4. *Conclusion.*

Latshaw did not declare a value for its valve on the bill. Under SAIA's tariffs, in that event, SAIA is liable for the loss of the valve, but its liability is limited to $0.10 per pound.

Signed on August 8, 2013, at Houston, Texas.

Lynn N. Hughes
United States District Judge